NIAGARA FRONTIER BUILDING CORP., INC., Respondent-Appellant, v. STATE OF NEW YORK, Appellant-Respondent. (Claim Nos. 42742, 42760A, 43599 and 44344.)

Fourth Department, April 6, 1967.

*Louis J. Lefkowitz*, Attorney-General (*Jean M. Coon* and *Ruth Kessler Toch* of counsel), for appellant-respondent.

*Augustine A. Mosco* for respondent-appellant.

*Per Curiam.* The State appeals from a judgment awarding damages for loss of rental income based upon an abandoned intention to appropriate claimant's property. The latter cross-appeals and contends that its damages were improperly measured.

Claimant in 1961 owned a six-story building in Buffalo which housed several commercial tenants. In March, 1961 an officer of one of the tenants had conversations with an employee of the State in regard to the construction of the so-called Skyway-Thruway Loop which might necessitate the demolition of claimant's building. On March 3, 1961 the office of the Buffalo District Engineer, Department of Public Works of the State wrote a letter to the tenant stating the construction would mandate the demolition of the building; that the design of its highway was " 98% completed "; that it was expected that a construction contract would be let " early this year " and that negotiations to acquire rights of way would be underway " within a month ".

This information apparently was passed on to other tenants in the building. Between June and October, 1961 substantially all of the tenants, including the one to whom the letter was written, moved from the building. During the following year the building had three tenants and in October, 1962 it was closed by claimant for lack of income to pay expenses of operation. There was proof that the tenant who received the letter would have remained in the building at least until March, 1963 if the letter had not been written.

The next action on the part of the State appears to have been taken in May, 1963 when an appropriation map was filed in the offices of the State Department of Public Works and Department of State. There is no proof that the map was filed in the Erie County Clerk's office, so no legal appropriation ensued (Highway Law, § 30, subd. 6). In July, 1963, however, a copy of the map was served on claimant with a letter stating that

the afore-described filing authorized the State to take possession of the property (cf. Highway Law, § 30, subd. 5). The letter also stated in substance that negotiations would ensue with the hope that an amicable settlement could be had " of the claim growing out of the acquisition of this property."

There the matter ended so far as the record discloses. Upon the cross-examination by the State of the official who wrote the initial letter of March, 1961, it was casually brought out that this and several other highway projects (financed largely by Federal funds) had been delayed or abandoned because of a dispute between Federal and State officials as to whether tolls could or should be charged by the State to users of such an expressway constructed mainly by the use of Federal moneys.

The trial court awarded claimant as damages the sum of $3,000 representing the rental for one year (October, 1961 to October, 1962) that it would have received from the tenant who received the letter from the State agency. It denied recovery for loss of rentals from several other tenants. It is not clear as to the precise legal theory upon which the award was made. The proximate cause of the removal of the tenant in the Fall of 1961 could have been found to have been the contents of the State's letter of May, 1961. Liability, however, appears to have been bottomed upon the 1963 acts of filing the appropriation map in the State offices although not in the County Clerk's office. The trial court concluded that " Since these steps had been completed, * * * the claimant [is] entitled to a recovery even though there was, in fact, no appropriation." It was further stated " that there was more than an intent to appropriate the property, since the initial steps had been completed and, without doubt, would have been actually appropriated if Federal Funds had not been withdrawn."

Missing from the record before us, however, is proof as to when the dispute between Federal and State officials originated and the date when the former made an irrevocable decision not to supply moneys if the proposed highway was not a freeway. The facts contained in the State's letter of March, 1961 made it clear that construction was imminent. Indeed, the tenant was told therein that " you should know the present status of our construction time-table so that you may provide for the necessary removal * * * at the earliest possible date."

There followed the hiatus of more than two years after which the maps were filed in the two State offices and claimant was warned that the State was then in a position to take possession of the property. It appears to be doubtful that these overt

**332**

acts would have been taken in the Summer of 1963 if the dispute with Federal officials was then in progress. On the other hand if the imbroglio between the two Governments took place subsequent to July, 1963 then the present contention of the State — that the letter of March, 1961 was written in good faith but the subsequent delay was due solely to the dispute — loses some of its validity.

We neither directly nor inferentially express any opinion as to claimant's right to recover for the whole or any part of its alleged loss of rentals. Such may only be done when all facts are presented. The judgment should be reversed and a new trial granted.

Bastow, J. P., Goldman, Henry, DelVecchio and Marsh, JJ., concur.

Judgment unanimously reversed on the law and facts, without costs, and a new trial granted.